# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| STEFANIE DAWN WILLIAMS, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-0236-CLS |
| ) | |
| ANDREW SAUL, Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Claimant, Stefanie Dawn Williams, commenced this action on February 7, 2019, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration, affirming the decision of the Administrative Law Judge ("ALJ") and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. Upon review of the record and briefs and for the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and whether correct legal standards were applied. *See, e.g., Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts the following:

> 1. The ALJ failed to adequately consider Plaintiff's [Claimant's] testimony concerning the side effects of her pain medication.
>
> 2. The finding that Claimant can perform her past work is not supported by substantial evidence and is not in accordance with proper legal standards.
>
> 3 The Appeals Council erred in failing to grant review based on new, material, and chronologically relevant, submissions including an independent Medical Evaluation by an examining physician, holding that that the submissions "do not create a reasonable possibility that it would change the outcome of the decision".
>
> 4. The denial of benefits was not based on substantial evidence. In reviewing the Commissioner's decision to deny benefits, this court must evaluate any evidence not submitted to the ALJ but instead first considered by the Appeals Council.

Doc. no. 8, at 1 (alteration supplied).

Claimant filed her application for benefits under Titles II and XVI of the Social Security Act on September 21, 2015, alleging that her disability began on April 23, 2015 (commonly referred to as date of onset). She last met the insured status

requirements of the Social Security Act on June 30, 2017.[1] Her initial application was denied by the disability determination service on November 24, 2015. Claimant then requested a hearing before an ALJ which was held by video conference on November 28, 2017.[2] The ALJ issued a written decision on January 12, 2018, finding the claimant not disabled during the period from her date of onset thru the date of his decision.[3] On April 8, 2018, three months after claimant's hearing before the ALJ, Dr. Janie Teschner of the Mercey Medical Clinic in Gadsden, Alabama, completed a physical capacities examination form concerning the claimant.[4] Dr. Teschner's opinion is that the claimant is severally limited in her ability to perform work in an eight-hour period. In addition, her opinion states that claimant's limitations existed as far back as April 23, 2015, the alleged onset date. Claimant filed a request for review of the ALJ's opinion with the Appeals Council on March 16, 2018, and submitted Dr. Teschner's opinion along with numerous other medical records on April 13, 2018. Roughly nine months later the Appeals Council denied her request for review, stating that "we find this evidence does not show a reasonable probability that it would change the outcome of the decision."[5]

---

[1] Tr. 20, 295 and 322 (Social Security certified earnings record shows consistent employment earnings without a break from 1998 thru 2015).
[2] Tr. 20.
[3] Tr. 29.
[4] Tr. 10.
[5] Tr. 1-2.

3

However, since the new evidence was not available to the ALJ before he made his decision, but was first submitted to the Appeals Council, the court must apply the following standard:

> When a claimant submits new evidence to the AC [Appeals Council], the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram [v. Commissioner of Social Security Admin.]*, 496 F.3d [1253,] at 1262 [11th Cir. 2007]. Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 Fed. App'x. 789, 802 (11th Cir. 2008) (alterations supplied). The Commissioner asserts that the new evidence, specifically Dr. Teschner's opinion, does "not raise a possibility of changing the ALJ's decision and does not undermine the substantial evidence of the record supporting the ALJ's determination that Plaintiff [Claimant] is not disabled."[6] No argument is presented that the new evidence fails to relate back to the period of disability alleged.

The court will first address claimant's third and fourth arguments, since they involve the new evidence which the ALJ did not have the opportunity to review. The court notes that all of claimant's arguments morph into one central assertion – that the

---

[6] Doc. no. 9, at 13 (alteration supplied).

ALJ erred in steps four and five,[7] by finding that the claimant could perform her past relevant work, as a cashier II, or other work and, therefore, is not disabled.

In his decision the ALJ found the following severe impairments: status post anterior cervical fusion and discectomy at C-5 & C-6 and C-6 & C-7, cervical C-6 corpectomy[8] and status post lumbar hemilaminectomy at L-3 & L-4 and L-4 & L-5.[9] Further, the ALJ specifically considered claimant's symptoms (her complaints of pain) and found that her medical conditions "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence. . . [and] because the objective medical evidence does not support [the] severity alleged by the claimant."[10]

A review of the claimant's medical records indicate that although her back and neck issues may have reached maximum medical improvement, she continued to

---

[7] The Social Security Administration uses a five-step sequential evaluation process (20 C.F.R. 404.1520(a) and 416.920(a)) to determine whether an individual is disabled. Step four involves the determination of an individual's residual functional capacity ("RFC") followed by a determination of their ability to perform their past relevant work considering the RFC. If the ALJ determines that the individual cannot perform their past relevant work, the evaluation proceeds to step five which involves the determination of whether the individual can perform any other work that exists in significant numbers in the national economy. Tr. 21.

[8] According to the operative report the procedure performed on October 28, 2014 was a C-6 corpectomy [removal of part of the vertebral body] with Valeo VBR strut fusion C-5 to C-7, local bone graft, Trinity allograft and Atlantis plate fixation C-5 to C-7. Tr. 489 (alteration supplied).

[9] The procedure was performed on March 10, 2017, and claimant seemed to be recovering well until she fell down some steps few weeks after the procedure. Tr. 603, 606, and 634.

[10] Tr. 25-26 (ellipsis and alteration supplied).

suffer from considerable pain even after the surgical procedures.[11] Her medical records are replete with consistent complaints of pain and prescribed pain medication.[12] During the hearing claimant testified that she has had consistent neck and back pain even after her surgeries, that the neck pain caused her to experience left arm spasms once a week, resulting in the loss of use of her left arm, and that she has fallen numerous times after her surgeries.[13] Also, she testified that the neck pain causes her acute migraines, one every two weeks which last for two days, but the migraines are not mentioned in the ALJ's opinion.[14] There is also testimony that claimant is no longer covered by medical insurance and the new medical records support this assertion.[15]

Nonetheless, the ALJ found that claimant's complaints as to the level of pain were inconsistent with the medical imaging evidence. Specifically, he states that "imaging studies do not support the level of severity [of pain] alleged by the claimant."[16] Although pain is usually not a symptom that can be conclusively determined upon the review of medical imaging, the ALJ did consider her complaints

---

[11] Tr. 59-61.
[12] Tr. 474, 475, 477, 479, 481, 484, 487, 489, 491, 495, 498, 502, 509, 510, 517, 523, 531, 544, 560, 569, 581, 601, 603, 606, and 634.
[13] Tr. 62-63.
[14] Tr. 70.
[15] Tr. 50 and 99-104.
[16] Tr. 26 (alteration supplied).

of pain in determining her residual functional capacity ("RFC") by imposing restrictions, such as, a sit/stand option, finding that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would require a sit/stand option with the retained ability to stay on or at a work station in no less than 30 minute increments each without significant reduction of remaining on task and she is able to ambulate short distances up to 100 yards per instance on flat, hard surfaces. She is able to occasionally use bilateral foot controls and frequently use non-dominant left hand controls. She can frequently reach overhead as well as reach in all other directions with the left non-dominant hand. She can frequently handle, finger and feel with the left non-dominant hand. She can occasionally climb ramps and stairs but never climb ladders or scaffolds. She can frequently balance but can only occasionally stoop, crouch, kneel, and crawl. The claimant should never be exposed to unprotected heights or operate commercial motor vehicles.

(Tr. 25). In sum, the ALJ determined that the claimant could perform light work at a level less than the full range of this work classification.

Based upon this RFC, the ALJ concluded at step four that the claimant could perform her past relevant work, as a cashier II. However, upon testimony by the vocational expert that the availability of such jobs is reduced by the "sit/stand option," the ALJ questioned the vocational expert about the claimant's ability to perform other work.[17] In response, the vocational expert testified that the claimant, with adjustment for her RFC, could perform other jobs, such as: small parts

---

[17] Tr. 28.

7

assembler, laundry folder, and hand packager.[18]  Interestingly, the consideration of pain in relation to claimant's capability to perform regular work is found in the last hypothetical posed by the ALJ to the vocation expert which requests that she consider an individual who can perform light work, with severe pain, and who "would be unable to sustain sufficient concentration, persistence and pace to do even simple tasks or an 8-hour day or a 40-hour week on a regular and continuing basis."[19]  The vocational expert responded that such a person would not be able to perform any type of work in the national economy.[20]  The attorney for the claimant posed one hypothetical to the vocational expert, concentrating upon the level of absenteeism generally tolerated in the employment arena to maintain gainful activity.  The vocational expert testified that "[a]nything in excess of one day a month, an individual would not be able to maintain competitive employment."[21]  This line of questioning was based upon a medical opinion dated March 30, 2015, by Dr. Daniel Ryan,[22] regarding claimant's left arm spasms, in which he states: "I feel it's very reasonable for her to miss a few days a month due to cervical spasm."[23]  This medical

---

[18] Tr. 29.
[19] Tr. 88.
[20] Tr. 89.
[21] *Id.*
[22] Dr. Ryan is a medical doctor with the Northeast Orthopedic Clinic in Gadsden, Alabama. Tr. 477 & 479.
[23] *Id..*

8

opinion, however, was not addressed or referenced in the ALJ's opinion.

Among the new evidence submitted after the ALJ's opinion,[24] Dr. Teschner's opinion is the most significant record, for it substantially limits the claimant's functional capacity. This opinion provides that the claimant during an eight-hour day would not be able sit or stand for more than 15 minutes at one time; she would have to lie down for 5-6 hours a day; she would be off-task with normal breaks 65% of the time; and she would miss 5-6 days in a 30 day period.[25] The opinion attributes the cause of her limitations to pain in her back and neck, and states that it is "worse [post] surgery"[26] Also, the opinion highlights drowsiness as a side effect of her medications.[27] There was extensive evidence before the ALJ of prescribed pain medication, but he did not address any possible side effects in making his determination. Dr. Teschner's opinion appears consistent with claimant's physical injuries,[28] subsequent surgeries, the medical opinion of Dr. Ryan regarding her neck spasms and absenteeism, and constant complaints of pain, as noted in her medical records before and after her surgical procedures.

---

[24] The other medical records filed with claimant's request for review before the Appeals Council provide additional support for her claims of neck and back pain before and after her surgical procedures along with consistent prescriptions for pain medication. Tr. 95-202.

[25] Tr. 10.

[26] *Id.* (alteration supplied).

[27] *Id.*

[28] The record provides that claimant has experienced a four wheeler accident, a car accident, numerous falls, and an incident where she fell off a horse. *See* footnote 11.

Social Security Regulation ("SSR") 96-8p provides that an individual must be able to perform work on "[a] 'regular and continuing basis' [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule.[29] A medical opinion that the claimant cannot maintain the level of work capacity required under SSR 96-8p is substantial evidence of the inability to perform any gainful activity. Therefore, in consideration of the new medical evidence along with the entire record, including the possible lack of insurance, consistent complaints of pain, and Dr. Ryan's opinion as noted above, the court finds that this new evidence, given the appropriate consideration and weight, would be substantial evidence of disability. Therefore, the court concludes that the newly submitted medical evidence, specifically the physical capacities evaluation by Dr. Jane Teschner, is significant and creates more than a reasonable possibility that it would change the outcome the decision. *Smith,* 272 Fed. App'x. at 802.

Accordingly, the decision of the Commissioner is REVERSED, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this opinion. On remand, the Commissioner should consider the new evidence, to include, Dr. Teschner's medical opinion along with that of Dr. Ryan, articulate the weight given to each and the reasons therefor, and revisit, if necessary, the decision regarding the claimant's ability to perform

---

[29] SSR 96-8p, at ¶ 1 (alteration supplied).

gainful activity. Based upon the foregoing, it is not necessary to address the claimant's remaining arguments. A separate order will be entered contemporaneously herewith.

**DONE** this 21st day of January, 2020.

_____
Senior United States District Judge